CARROLL, DONALD K., Acting Chief Judge.
The appellant was tried and convicted of the crime of manslaughter by the Circuit Court for Jackson County.
The sole question presented for our determination in this appeal is whether the trial court erred in admitting into evidence the results of a blood test administered upon the appellant’s blood, pursuant to Section 322.-261, Florida Statutes, F.S.A., despite the fact that the evidence established that the appellant was not placed under arrest until some three months thereafter.
The appellant was charged with manslaughter in causing the death of Robert E. Harris by operating a motor vehicle while intoxicated, contrary to Section 860.01, Florida Statutes, F.S.A.
The evidence at the trial pertinent to the present inquiry established the following:
On December 7, 1968, the appellant was driving his automobile on a highway in the said county when it collided with a car driven by the said Harris. No one witnessed the collision other than the two drivers. The two men, apparently being seriously injured, were carried to a hospital in a near-by city, where Harris soon died of his injuries.
While the appellant was in the emergency room of the hospital, a member of the Florida Highway Patrol ordered that a blood sample be taken from him to determine the alcoholic content of his blood. This sample was taken and sent to the State Board of Health, which made tests of the sample showing an alcoholic content in excess of 0.1%.
The evidence establishes without contradiction that the appellant was not under arrest at the time of the blood test. In fact, it was not until March 10, 1969, about 3 months after the collision and blood test, that the warrant of arrest was issued.
The trial court admitted into evidence the blood test results despite numerous objections by the appellant.
Subdivisions (1) (a) and (1) (b) of Section 322.261, Florida Statutes, F.S.A., under which the said blood test was purportedly made, read as follows:
“*322.261 Suspension of license; chemical test for intoxication.—
(1) (a) Any person who shall accept the privilege extended by the laws of this state of operating a motor vehicle within this state shall by so operating such vehicle be deemed to have given his consent to submit to an approved chemical test of his breath, urine, or saliva for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle while under the influence of alcoholic beverages. The test shall be incidental to a lazuful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle within this state while under the influence of alcoholic beverages. Such person shall be told that his failure to submit to such a chemical *436 test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.
“(b) Any such person who is incapable of refusal by reason of unconsciousness or other mental or physical condition shall be deemed not to have withdrawn his consent to any such test. Any such person whose consent is implied as herein-above provided and who, during the period within which test prescribed herein can be reasonably administered, or who, being admitted to a hospital as a result of his involvement as a driver in a motor vehicle accident, is so incapacitated as to render impractical or impossible the administration of any of the aforesaid tests of breath, urine, or saliva, shall be deemed to have consented also to an approved blood test given as provided for herein, and shall be deemed not to have withdrawn his consent therefor. Under the foregoing circumstances of this subsection, such tests, inclusive of said blood test, may be administered whether or not such person is told that his failure to submit to such blood test will result in the suspension of his privilege to operate a motor vehicle upon the public highways of this state. * * * ” (Emphasis supplied)
These two subdivisions, (a) and (b), must, under the cardinal rule of statutory construction, be construed together, “in pari materia,” in order to ascertain the legislative intent in enacting those provisions. For example applying that rule, we think that the first three words in subdivision (b) “Any such person” mean the person described in paragraph (a), in all of the qualifying phrases in (a), including the phrases “if lawfully arrested” and “incidental to a lawful arrest.” If these phrases referring to arrest were not applicable under (b), we would have the anomaly of requiring an arrest before administering the relatively simple external tests mentioned in (a) — the breath, urine, or saliva tests — while in (b) permitting the more serious internal blood test to be administered to an unconscious person without an arrest. We conclude, therefore, that, a blood test to determine alcoholic content cannot be administered to an unconscious person not under arrest for an offense committed while the person was driving a motor vehicle while under the influence of alcoholic beverages.
If we did not so construe subdivision (b), that provision would probably be held unconstitutional as violative of constitutional guarantees against self-incrimination and unreasonable searches and seizures under the decision of the United States Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In that case the Supreme Court upheld a California municipal court conviction based upon a compulsory blood sample, against the defendant’s contention that such a practice violated the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U. S. Constitution. The Supreme Court several times appeared to emphasize the fact that the defendant was under arrest when the blood sample was taken.
The District Court of Appeal, Second District of Florida, in Mitchell v. State, 227 So.2d 728, (1969), took a similar view of the holding in the Schmerber case, holding that “ * * * the all-important fact remains, crucial to our holding here, that when the blood was so taken Schmerber was actually under arrest and in actual legal custody of the police upon a valid criminal charge.”
The Mitchell case involved an appeal from a judgment of conviction of manslaughter by culpable negligence in driving an automobile. Blood was taken from the defendant without his consent while he was at a hospital after an automobile accident and while he was not under arrest. Our sister court said:
“We hold in the case sub judice that the blood-taking evidence was inadmissible when tested by the constitutional guar *437 anties against compulsory self-incrimination and unreasonable searches and seizures, in light of the facts and circumstances under which the blood was forcibly taken.”
The court then reversed the judgment of conviction.
In addition, it should be noted that the State contends the taking of the blood sample was permissible even though appellant was not under arrest at the time. The State bases this assertion on the contention that the appellant consented to having the blood sample taken even though he had not then been arrested. We have carefully considered this contention and examined the evidence in the record. It is clear from the testimony of all witnesses that at the time the blood sample was taken, the appellant was in a state of intoxication, his speech was slurred, his eyes were filled with blood and debris to the extent that he could not even see the highway patrolman questioning him. He was in a state of semi-consciousness and refused to talk to anyone concerning the events of the collision. We fail to find anything in the evidence from which a reasonable conclusion could be drawn that the appellant consented that the blood sample be taken from him which was used as evidence in this case. This contention of the appellee must therefore be rejected.
For the foregoing reasons, we have reached the conclusion that in the case at bar the trial court committed reversible error in admitting into evidence the results of the blood test performed upon the body of the appellant while he was not under arrest. Those results constituted the chief evidence against the appellant to prove an essential element of the crime of which he was charged, tried, and found guilty, and so such error was prejudicial to the appellant.
Accordingly, the judgment appealed from must be, and it is, reversed and the cause remanded with directions for further proceedings consistent with the views herein-above set forth.
Reversed and remanded with directions.
WIGGINTON and RAWLS, JJ., concur.