278 So.2d 78 (1973)
STATE of Louisiana, Appellee,
v.
J. C. GRAHAM, Appellant.
No. 53124.
Supreme Court of Louisiana.
May 7, 1973.
*79 Fred L. Jackson, Homer, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Special Asst. Atty. Gen., Leon H. Whitten, Dist. Atty., Paul A. Newell, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Graham was convicted of negligent homicide, La.R.S. 14:32, and sentenced to four years at hard labor. Graham appeals, relying on three bills of exceptions.
The context facts are: The defendant Graham was the driver of a car involved in a two-vehicle collision. A 16-year old occupant of the other vehicle was killed in the accident. Graham was taken unconscious to a local hospital, where blood was withdrawn from his arm. Upon subsequent analysis by the State Medical Technician in Baton Rouge, the blood contained sufficient alcohol to create a presumption that Graham was intoxicated at the time of the accident, see L.A.R.S. 32:662 (1968).

Bill No. 1
Bill No. 1 was taken to the admission of testimony by a local medical technician concerning the extraction of blood from the defendant's arm when unconscious. The ground is that such blood was removed from the defendant without his consent. The trial court held that there was "implied consent" by virtue of La.R.S. 32:661 (1968).
The accident occurred on December 5, 1971. At that time, the statutory regulation applicable was provided by La.R.S. 32:661 as enacted by Act 273 of 1968, Section 14. In substance, subsection A of La.R.S. 32:661 provides that a person operating a motor vehicle on a public highway shall be deemed to consent to scientific tests to determine the alcoholic content of his blood, at least "if arrested" for a motor vehicle offense while believed to be under the influence of alcoholic beverages.[1] Subsection B provides that this implied consent is not withdrawn if the person is dead or unconscious or otherwise incapable of refusing to take the tests.[2]
*80 Thus, by simple construction of the 1968 enactment then in effect[3], the unconscious defendant had, by operating his vehicle on a public highway, given his implied consent to the blood-testing conducted.
If the defendant had been conscious, he could have withdrawn his implied consent, but such refusal was admissible in evidence, La.R.S. 32:666 (1968) with all the practical adverse inference the trial jury might have drawn from such refusal[4] in light of the circumstances of the accident. But, under the statute, his implied consent was not withdrawn, and the testing and results of it were permissible and admissible.
We were initially given some concern as to whether the consent implied by the statute extended only to cases where the defendant was actually "arrested". See La.R.S. 32:661(A) quoted in Footnote 1 above, and compare 32:661(B) quoted in Footnote 2 above. See Note, 15 Loyola L. Rev. 117, 125-127 (1968). However, no objection was raised upon such ground, and no evidence in the record or attached to any bill of exceptions shows that the defendant was not arrested at the time the blood was extracted from his arm. We therefore conclude that this issue is not before us.
As to the claimed unconstitutionality of the extraction of the blood from the person for alcohol testing without the actual consent of the individual: The United States Supreme Court has held that, where such is done with probable cause and in a reasonable manner, there is no violation of constitutional guarantees of due process and against self-incrimination and unreasonable search and seizure. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957).
We ourselves have indicated that no deprivation of constitutional right so occurs. State v. Dugas, 252 La. 345, 211 So.2d 285 (1968). This view represents the general rule followed by most of the more recent decisions of the other American jurisdictions. Annotation, Physical Testconstitutionality, 25 A.L.R.2d 1407 (1952), supplementing 164 A.L.R. 967 (1948).

Bill Nos. 2 and 3
The remaining bills were taken to the admission of the vial of blood taken from the defendant. The essential additional grounds urged were that the medical technicians could not unequivocably testify that it was impossible for the vial to have been tampered with, either as it sat on a laboratory *81 rack when a technician was momentarily out of the laboratory or else when in transit in the mails (firmly sealed) from the local hospital to the State Medical Technician in Baton Rouge.
Similar contentions were rejected in State v. Coleman, 254 La. 264, 223 So.2d 402 (1969). The chain of circumstances established by the State's evidence sufficiently proves, by a preponderance of the evidence, continuous custody, control, and supervision over the vial of blood. Mere speculation that the blood sample might have been tampered with, in the face of the strong preponderant proof to the contrary, does not defeat admissibility of the sample; however permissible an argument of possible tampering might be to the trial jury.

Decree
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] La.R.S. 32:661(A) provides: "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of R.S. 32:662, to a chemical test or tests of his blood, breath, urine or other bodily substance for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages. The law enforcement agency by which said officer is employed shall designate which of the aforesaid tests shall be administered."
[2] La.R.S. 32:661(B) provides: "Any person who is dead, unconscious or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by Subsection (A) of this section, and the test or tests may be administered subject to the provisions of R.S. 32:662."
[3] By Act 534 of 1972, section 2, added to La.R.S. 32:661 was a subsection C. The effect of this section was to provide that the officer must inform the person that a refusal to submit to the tests was admissible in evidence against him, La.R.S. 32:666 (1968), and subjected him to immediate suspension of his driver's license for a period of six months, La.R.S. 32:667 (1972). This act became effective on July 26, 1972, prior to the trial of October 20, 1972. No contention is made that the 1972 enactment applied to the 1971 accident.
[4] By a plurality opinion, this court held that the refusal to take such a test does not, under the statute, create a legal presumption that the result would be adverse. City of Monroe v. High, 254 La. 362, 223 So.2d 834 (1969). See Note, 15 Loyola L.Rev. 117 (1968).

This court has also held that the refusal to submit to blood testing is admissible and that evidence of such offends no constitutional right. State v. Dugas, 252 La. 345, 211 So.2d 285 (1968), critically noted 15 Loyola L.Rev. 117 (1968) and 30 La. L.Rev. 331-332 (1969). See also Annotation, EvidenceAlcoholic TestRefusal, 87 A.L.R.2d 370 (1963), discussing the almost uniform holdings in other states holding valid a statutory provision for admission of evidence of the refusal to take a blood test.