ANTONIO GALVAN, APPELLANT, *v.* THE
STATE OF NEVADA, RESPONDENT.

No. 13502

December 15, 1982                    655 P.2d 155

---

[1]The telephone calls were apparently initiated by Coin-O-Matic's Nevada-based employees.

*J. Gregory Damm,* Nevada State Public Defender, and *Robert A. Bork,* Chief Deputy Public Defender, Carson City, for Appellant.

*Richard H. Bryan,* Attorney General; *William A. Maddox,* District Attorney, and *Charles P. Cockerill,* Deputy District Attorney, Carson City, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Appellant Galvan contends that the trial court erred in admitting evidence of a blood sample taken from appellant and in convicting him of multiple counts of felony drunk driving. We find no error and affirm.

On November 22, 1980, Galvan, accompanied by two friends, drove his pickup through a posted intersection in Carson City, colliding with another vehicle traveling on a through

street, and killing both of its occupants. Galvan and his two passengers were seriously injured. When the police officer arrived on the scene, Galvan apparently was unconscious in his vehicle. The officer detected the smell of alcohol on Galvan's breath. Galvan was transported to a hospital, still unable to respond to questions by officers. Upon the police officer's request, a lab technician took blood samples from Galvan. No search warrant was obtained prior to extracting the blood sample, and Galvan was not arrested until four days later. The blood sample revealed an alcohol content of .263 percent.

Appellant was initially charged with four counts of Driving Under the Influence of Intoxicating Liquor Causing Death of or Substantial Bodily Harm to Another Person. NRS 484.3795. Prior to trial, appellant filed a petition for writ of habeas corpus, requesting the trial court to reduce the four felony counts to one. The petition was denied, as was a petition for writ of mandamus or for prohibition filed with this court. The two counts concerning serious bodily injury to Galvan's passengers were dismissed prior to trial.

During the bench trial, appellant moved unsuccessfully to suppress the blood sample as evidence obtained from an illegal search and seizure. The trial judge found Galvan guilty of the two remaining counts and sentenced him to two consecutive six-year terms.

1. *Admission of Blood Sample Evidence.*

Appellant contends that NRS 484.383, Nevada's implied consent law, requires an arrest of the suspect before a blood sample can be lawfully taken. He also argues that the Fourth Amendment prohibits taking a blood sample unless incident to lawful arrest or with the suspect's consent.

NRS 484.383[1] reads in part:

> 1.  Except as provided in subsections 4 and 5, any person who drives a vehicle upon a highway in this state shall be deemed to have given his consent to a chemical test of his blood, urine, breath or other bodily substance for the purpose of determining the alcoholic content of his blood or the presence of a controlled substance when such a test is administered at the direction of a police officer having reasonable grounds to believe that the person to be tested

---

[1]The statute was amended, effective July 1981, to expressly allow for conducting a blood test either on one who has been arrested or on one who is "dead, unconscious or otherwise in a condition rendering him incapable of being arrested." Thus, the new provision clearly adopts respondent's position that lawful arrest is *not* a precondition to taking a blood sample from an unconscious driver.

was driving a vehicle while under the influence of intoxicating liquor or a controlled substance and after he was arrested for any offense allegedly committed while he was driving a vehicle under the influence of intoxicating liquor or a controlled substance.

. . .

3. Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent, and any such test may be administered whether or not the person is informed that his failure to submit to the test will result in the suspension of his privilege to drive a vehicle for a period of 6 months.

There can be no question that subsection 1 becomes operative only upon an arrest of a driver capable of refusing consent. However, subsection 3 contains no similar requirement for persons incapable of refusing consent. We will not imply such a requirement. *See* State v. Campbell, 615 P.2d 190 (Mont. 1980); State v. Mangels, 531 P.2d 1313 (Mont. 1975) (construing similar implied consent statute). Even if we were to assume that subsection 3 was ambiguous, any doubt as to the legislature's intent in enacting this provision was resolved by the 1981 amendment to NRS 484.383, which unequivocally permits performance of alcohol tests on those incapable of being arrested if there is probable cause for an arrest under the statute. We have held that when the legislature resolves ambiguity or doubtful interpretation in a statute by amendment, that amendment is evidence of the legislature's intent in the original statute. *See* Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396 (1975).

We are also inclined to construe our implied consent statute liberally in order to promote the legislative policy of removing intoxicated drivers from our state's highways. *See* Morrow v. State, 303 A.2d 633 (Del.Sup. 1973).

In addition, we reject appellant's argument that the Fourth Amendment requires an arrest prior to a blood alcohol test. We recognize that this question has resulted in a split in authority among those courts which have examined the constitutional requirement for an arrest. *See* 2 La Fave, Search and Seizure, § 5.4(b) (1978). Many of those courts which have subscribed to a Fourth Amendment arrest requirement, despite a defendant's unconscious condition, have relied on Schmerber v. California,

384 U.S. 757 (1966). *See, e.g.,* Shores v. State, 233 So.2d 434 (Fla.App. 1970); State v. Davis, 226 A.2d 873 (N.H. 1967).

In *Schmerber,* the Supreme Court upheld the admissibility of a blood test taken on a conscious defendant who had expressly refused consent. The Court determined that although blood extraction was clearly within the scope of Fourth Amendment protection, the minimal intrusion entailed by a properly performed test was justified by the circumstances. The court noted that the test was performed subsequent to a lawful arrest and that the arresting officer could have reasonably believed that delay in testing the alcoholic content of the defendant's blood, which rapidly diminishes in time, threatened destruction of the evidence and excused the failure to obtain a warrant. *Id.* at 770-771.

We do not believe, however, that the *Schmerber* decision holds that arrest is an absolute prerequisite to a blood test for alcohol. We decline to impose such an absolute requirement. The fruits of searches performed without a warrant, a prior arrest or consent should only rarely be admitted into evidence if a defendant's Fourth Amendment protections are to be respected. However, there may exist exigent circumstances which validate a limited search such as the test performed on Galvan. *See* Cupp v. Murphy, 412 U.S. 291 (1973); State v. Campbell, *supra.*

We find, in the instant case, that Galvan's unconscious condition rendered formal arrest meaningless and unnecessary. *See* State v. Campbell, *supra;* La Fave, *supra. See also,* Cupp v. Murphy, *supra.* There appears to be no dispute that probable cause existed to arrest Galvan for driving while under the influence of alcohol prior to the test. The officer, faced with the inevitable and rapid destruction of the evidence and Galvan's unconsciousness, could reasonably have believed that he was confronted with an emergency, so that he could not delay by obtaining a warrant or waiting until Galvan regained consciousness.

Thus, we determine that there was neither a violation of NRS 484.383 nor constitutional infirmity in admitting the blood sample evidence at trial.

2. *Conviction on Multiple Counts.*

Appellant, convicted of multiple counts under NRS 484.3795, urges this court to adopt the rule announced in two California appellate court decisions. Those cases hold that violation of the drunk driving law results in only one offense, and

consequently one sentence, regardless of the number of victims. People v. Moore, 97 Cal.Rptr. 601 (Cal.App. 1971); People v. Lobaugh, 95 Cal.Rptr. 547 (Cal.App. 1971).

In *Lobaugh,* the court determined that

> . . . the fundamental concern of the state is not the outrage done the victims, but rather the prevention of "drunken driving" and the punishment of those who so conduct themselves. . . . "[I]t is not the receiving of the injury that concerns the state, but the *causing* of such injuries which the state seeks to minimize."

*Id.* at 549-50 (quoting People v. Chatham, 110 P.2d 704, 706 (Cal.App. 19741)).

The California cases depart from the usual rule, long established in Nevada, that a course of conduct resulting in harm to multiple victims gives rise to multiple charges of the offense. *See* State v. Lambert, 9 Nev. 321 (1874).

Appellant urges us to apply the *Lobaugh* court's reasoning to NRS 484.3795 because Nevada's statute is similar to California's. We fail to perceive that this is a compelling reason to adopt the *Lobaugh* court's rationale. We believe that the *Lobaugh* court too narrowly defines the public policy concerns underlying drunken driving statutes. We are convinced that the state is concerned with both the "causing" *and* "receiving" of the injuries which the legislature has sought to minimize. We therefore uphold the conviction of the two felony counts.

GUNDERSON, C. J., and SPRINGER, MOWBRAY, and STEFFEN, JJ., concur.