STACEY L. ALMOND, Appellant, *v.* THE STATE
OF NEVADA, Respondent.

No. 19811

December 29, 1989                              785 P.2d 217

[Rehearing denied March 6, 1990]

*Rick Lawton* and *Associates,* Fallon, for Appellant.

*Brian McKay,* Attorney General, Carson City; and *Larry G. Bettis,* District Attorney, Mineral County, for Respondent.

## OPINION

*Per Curiam:*

On October 7, 1988, a jury found appellant Stacey Lee Almond guilty of driving under the influence of intoxicating liquor causing the death of another person, failure to render aid at an accident scene, and filing a false report. Almond was subsequently sentenced to 20 years in prison and fined $2,000.00. On appeal, Almond claims that: (1) the district court erred in admitting evidence of his blood samples which were taken without his consent; (2) the district court erred by failing to give a jury instruction required by NRS 47.230; and (3) the district court erred by admitting testimony from an accomplice with regard to the charge of failure to render aid at an accident scene.

### FACTS

After spending the early afternoon of February 10, 1988, drinking beer, Almond, Tony Porcelli, and Harold Blackwood decided to go for a drive in a pickup truck owned by Almond's father. Almond testified that while he was driving south out of Hawthorne on Route 359, Blackwood climbed out the passenger window in order to be a hood ornament. Porcelli testified that he was driving when Blackwood first climbed out onto the hood, that he was able to stop without incident, and that Almond then took over driving with Blackwood on the hood after stating to Porcelli: "Hop in. Nothing is going to happen." Both Almond and Porcelli testified that while Almond was driving, Blackwood fell off and was run over by the truck.

Almond pulled over, checked Blackwood's pulse and determined he was dead. Almond and Porcelli then loaded Blackwood into the back of the truck and Almond proceeded west into the hills up Alum Creek Road. After stopping the truck approximately 2.4 miles later, Almond noticed that Blackwood was still breathing, and he and Porcelli decided to take Blackwood to the hospital. Porcelli drove back down Alum Creek, stopped just before reaching Route 359, and elected to walk back to Hawthorne through the desert. Almond proceeded north on Route 359 and enlisted the help of Richard Paxton and Roxanne Ward at the junction of Lucky Boy Road. Blackwood was transferred to the back of Paxton's truck and delivered to Mount General Hospital in Hawthorne between 3:30 and 4:00 p.m. Blackwood's condition worsened in the emergency room and he was evacuated by air to Washoe Medical Center in Reno where he died two days later.

Mount General maintenance supervisor Donald Fisk drove Almond to the Mineral County Sheriff's Office where Almond reported the accident. At the sheriff's office, Almond filled out a written statement to the effect that Blackwood jumped out of the truck. Almond was then interviewed by a Deputy Calhoun and a Sergeant Nixon. Almond told the officers he had consumed seven or eight beers that afternoon. Almond also explained that Blackwood had been driving, then crawled out the driver's window onto the hood, and fell off as Almond was attempting to grab the wheel and control the truck. Almond further stated that he lifted Blackwood into the back of the truck, started back towards Hawthorne, then stopped and transferred Blackwood to another truck. After the interview, Deputy Calhoun placed Almond in civil protective custody pursuant to NRS 458.270. Calhoun testified that this action was taken to prevent Almond from leaving, since Almond was obviously intoxicated and Calhoun did not feel Almond could care for his own safety. Almond was then taken to Mount General Hospital where blood samples were obtained at 5:30, 6:58, and 7:18 p.m. without his consent. Those samples registered respective blood-alcohol contents of 0.180, 0.157, and 0.145 percent. Later that evening, Porcelli gave a statement at the sheriff's office, and Almond was advised that charges were being brought against him.

## DISCUSSION

### A. The Blood Samples

Almond contends that the district court erred in admitting evidence of his blood samples and argues that, when the samples

were taken, probable cause did not exist to believe he had caused injury or death to another while driving under the influence of alcohol. This contention lacks merit. Given Blackwood's injuries, Almond's obvious intoxication, and Almond's statement to officers that he had grabbed the wheel "to control the truck" while Blackwood was on the hood, we find that probable cause did exist at the time the blood samples were taken to believe Almond had violated NRS 484.3795.[1]

We also reject Almond's contention that his civil protective custody detention was unlawful. The facts clearly indicate that Deputy Calhoun had a justifiable basis for exercising his discretion in favor of detaining Almond pursuant to NRS 458.270. Finally, we hold that the officers were justified in not obtaining a warrant prior to taking Almond's blood samples. Almond's failure to remain at the accident scene, and the delays which occurred prior to Almond's arrival at the sheriff's office, caused an undetermined amount of time to elapse between the time of the accident and Almond's confrontation with authorities. Under such circumstances, and given the rapid and inevitable destruction of the evidence sought, the officers could reasonably have believed they were confronted with an emergency. *See* Galvan v. State, 98 Nev. 550, 554, 655 P.2d 155, 157 (1982).

Thus, we hold that the blood samples were lawfully taken pursuant to NRS 484.383(8) and properly admitted at trial. *See* Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826 (1966); *Galvan,* 98 Nev. at 554, 655 P.2d at 157.

### B. The Jury Instruction

Almond contends that the district court erred by not giving an instruction offered by the defense. Such instruction would have informed the jury that: (a) they may consider the presumption of intoxication which arises from a blood alcohol content of 0.10

---

[1]NRS 484.3795 provides in pertinent part:

> 1. Any person who, while under the influence of intoxicating liquor or with 0.10 percent or more by weight of alcohol in his blood, . . . to a degree which renders him incapable of safely driving or exercising actual physical control of a vehicle, does any act or neglects any duty imposed by law while driving or in actual physical control of any vehicle on or off the highways of this state, if the act or neglect of duty proximately causes the death of, or substantial bodily harm to, any person other than himself, shall be punished by imprisonment in the state prison for not less than 1 year nor more than 20 years and must be further punished by a fine of not less than $2,000 nor more than $5,000. . . .

percent or more, but are not required to adopt it; and (b) that as an element of the crime charged, intoxication must be, on all the evidence, proven beyond a reasonable doubt. Almond contends that failure to give such an instruction violated NRS 47.230[2] and our holding in Brakeen v. State, 104 Nev. 547, 763 P.2d 59 (1988). We agree.

NRS 47.230 clearly requires the instruction offered by the defense in this case. Respondent's contention that Cotter v. State, 103 Nev. 303, 738 P.2d 506 (1987) provides an exception to the requirements contained in NRS 47.230 when the statutory presumption of intoxication is involved is erroneous. In *Cotter,* we stated that:

> Whether a driver has been so influenced by the ingested substance will, with one exception, always be a question of fact, to be considered in light of such variable circumstances as the individual's resistance to the substance, the amount ingested and the type and time of ingestion.

*Cotter,* 103 Nev. at 306, 738 P.2d at 508. In a footnote, we explained that the opinion was not intended to have any effect on the presumption of intoxication set forth in NRS 484.381 which arises when persons have 0.10 percent or more by weight of alcohol in their blood. *Cotter,* 103 Nev. at 306 n.2, 738 P.2d at 508 n.2. Our statements in *Cotter* neither expressly nor impliedly excepted the above intoxication presumption from the requirements of NRS 47.230. Indeed, NRS 47.230(1) provides that statutory presumptions are governed by that section. Thus, in the instant case, it was error not to give the instruction offered by the defense.

---

[2]NRS 47.230 provides in pertinent part:

Presumption against accused in criminal actions.

1. In criminal actions, presumptions against an accused recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this section.

2. The judge shall not direct the jury to find a presumed fact against the accused. When the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge may submit the question of guilt or of the existence of the presumed fact to the jury, if, but only if, a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt. . . .

3. Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge shall instruct the jury that its existence must, on all the evidence, be proved beyond a reasonable doubt.

## C. Porcelli's Testimony

Almond contends that because Porcelli was an accomplice, his testimony was inadmissible under NRS 175.291 because it was not sufficiently corroborated by independent evidence. Further, Almond contends that the prosecution's grant of transactional immunity to Porcelli rendered his testimony inadmissible under *Franklin v. State*, 94 Nev. 220, 577 P.2d 860 (1978). Both contentions lack merit.

Almond told police he had been trying to control the wheel when Blackwood fell off the hood. Physical evidence obtained by investigators on February 10 and 11 established that an injured Blackwood had been loaded into the truck and driven up Alum Creek Road approximately 2.4 miles—away from nearby medical facilities. Shoeprints matching those of Almond and Porcelli were found at the spot where the two stopped and discovered Blackwood was alive. Hence, sufficient independent evidence existed and was adduced at trial to corroborate Porcelli's testimony that Almond had not remained at the accident scene and forthwith rendered aid to Blackwood.

Finally, the record contains no indication that Porcelli was required to testify other than truthfully in return for the State's grant of transactional immunity. The record also belies the argument that the prosecution depended substantially upon Porcelli's testimony in order to obtain Almond's conviction on the charge of failure to render aid at an accident scene. Thus, the prohibitions set forth in *Franklin* were not violated, and we reject Almond's final argument.

## D. Filing a False Report

Although Almond included his conviction of filing a false report in his notice of appeal, he has presented no argument to support a reversal of that conviction. We note that the record contains sufficient evidence to support the conviction and we therefore affirm it.

For the foregoing reasons, we affirm Almond's conviction of failure to render aid at an accident scene and of filing a false report. We reverse Almond's conviction of driving under the influence of intoxicating liquor causing the death of another person, remand the case to the district court for a new trial on that charge, and order that the jury be instructed in accordance with this opinion.