## STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES AND PUBLIC SAFETY, Appellant, *v.* CHUCK BROUGH, Respondent.

No. 20222

August 21, 1990                                      796 P.2d 1089

*Brian McKay,* Attorney General, Carson City; *Neil H. Friedman* and *Grenville Thomas Pridham,* Deputy Attorneys General, Las Vegas, for Appellant.

*John G. Watkins,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The primary issue is whether respondent Chuck Brough's refusal to submit to a blood test until he could be examined by a doctor constituted a refusal to submit to an evidentiary test for purposes of NRS Chapter 484. The district court reversed the DMV hearing officer's order revoking Brough's license for failure to submit to an evidentiary test. For the reasons set forth below, we reverse the decision of the district court.

### FACTS

On October 4, 1987, Agent Sant of the Taxi Authority informed Sergeant Peppley of the Nevada Highway Patrol that he was detaining a driver whom he believed to be under the influence of alcohol. When Peppley arrived, he observed Brough seated behind the steering wheel of his vehicle. Peppley noted that Brough's breath and person smelled of alcohol, and that his eyes were bloodshot, and that his balance was impaired. Peppley conducted a series of field sobriety tests, all of which Brough failed. Peppley then placed Brough under arrest for being in actual physical control of a vehicle while under the influence of intoxicating liquor.

Peppley read Brough Nevada's implied consent admonition.[1] Brough stated that he did not understand the admonition. Peppley read Brough the implied consent admonition a second time. Once

---

[1]The implied consent card contains a summary of the provisions contained in NRS 484.382-484.384 as follows:

again Brough stated that he did not understand the implied consent admonition. After a third reading, Brough agreed to submit to a breath test.

Peppley transported Brough to the Clark County jail. As Brough was getting out of the car, he told Peppley that he bumped his head. Peppley testified that he did not see Brough strike his head on the car. Once inside the jail, Brough began the breath test. After he started blowing into the machine, he said it was making him dizzy and he did not want to take the breath test. Peppley then took Brough to the nurse's station for a blood test. The nurse refused to admit Brough into jail until he was examined at the hospital.

Thereafter, Peppley asked Brough if he wanted to take the blood test at the jail before being examined at the hospital. Brough stated that he wanted to wait until he was first examined by a doctor.

As a result, Brough was transported to the University Medical Center (UMC) to receive an examination. While waiting in the UMC emergency room, Peppley again asked Brough if he would submit to a blood test by a lab technician, but Brough refused, stating that he would submit only after he was examined. The doctor completed an examination of Brough at 11 P.M., approximately five hours after his arrest. Peppley determined that no legitimate blood alcohol test could be given at that time, and informed Brough that he was going to submit a revocation of his driver's license for failure to submit to an evidentiary test pursuant to NRS 484.385(1).

IMPLIED CONSENT WARNING
You are requested to submit to a chemical test to determine the alcoholic content and/or controlled substance content of your blood.
You have a choice of whether the test is to be of your blood or breath, if available.
A refusal will result in the revocation of your driving privilege. If this is your first refusal, you will not be eligible for a driver's license, permit or privilege to drive for a period of one year. If you refuse to submit to a test and previously had your license, permit or privilege to drive suspended or revoked for failing to submit to such a test within seven years, you will not be eligible for a license, permit, or privilege to drive for a period of three years.
If you select a breath test, you will be required to provide two consecutive samples of your breath. A willful failure to provide a second sample is a failure to submit to a chemical test, and your driving privilege will be revoked.
[You are further advised that any warning relating to having an attorney present before answering any questions does not bear on the issue of submitting to a test of your blood or breath. YOU DO NOT HAVE THE RIGHT TO HAVE AN ATTORNEY PRESENT BEFORE SUBMITTING TO ONE OF THE REQUESTED TESTS.]

Upon Brough's request, an administrative hearing was held on November 4, 1987. The hearing officer determined that there was substantial evidence that the police officer had reasonable grounds to believe Brough had been driving a motor vehicle while under the influence of alcohol and that Brough failed to submit to an evidentiary test. In its order dated November 20, 1987, the Department of Motor Vehicles upheld the revocation of Brough's license, finding that all elements of proof necessary to sustain a charge of a violation of the Implied Consent Law under NRS Chapter 484 were supported by substantial evidence. Brough then sought judicial review of the DMV's decision. The district court reversed the order of the DMV, finding that Brough did not refuse to submit to an evidentiary test as a matter of law. This appeal by the DMV followed.

## DISCUSSION

The DMV argues that there is substantial evidence that Brough failed to submit to an evidentiary test, as required under NRS 484.386(3). NRS 484.386(3) provides that "[a] willful failure to provide a second consecutive sample is a failure to submit to a required evidentiary test." The DMV asserts that although Brough began the first breathalyzer test, his subsequent refusals to submit to a blood test constituted a refusal under NRS 484.386(3). *See* Corriveau v. Commissioner of Public Safety, 380 N.W.2d 214 (Minn.App. 1986). We agree.

Failure to provide two adequate breath samples constitutes a refusal for purposes of NRS 484.386(3). McCharles v. State, Dep't of Mtr. Vehicles, 99 Nev. 831, 673 P.2d 488 (1983). The implied consent statute does not require an express, unequivocal refusal to take the blood test before the individual's license may be revoked. *See, e.g.,* Beck v. Cox, 597 P.2d 1335, 1338 (Ut. 1979). In *McCharles,* the appellant was arrested for driving under the influence and refused to submit to a chemical sobriety test before speaking to his attorney. This court held that an individual arrested for DUI does not have a right to speak with his attorney prior to submitting to an evidentiary test, and his license may be suspended for refusal to submit to a test. Similarly here, Brough stated that he would not submit to a test until he had been examined by a physician because he felt dizzy during the first test. If a driver is required to submit to a test before consulting with his attorney, we conclude that he should also be required to submit to a test before examination by a doctor. A contrary conclusion could result in individuals faking injuries in

order to postpone the sobriety test. This may have even been the case here, because Brough did not produce any evidence of injury beyond his own assertion. The examining doctor did not find any injury. However, this holding is limited to the unique facts of this case, and does not apply to those situations where the individual is injured or ill and in need of medical attention.

The DMV next argues that Brough's consent to a blood test conditioned upon receiving a medical examination constituted a refusal to submit to an evidentiary test. This contention has merit.

The hearing officer was correct in concluding: "[o]nce a driver refuses to take any one of the chemical tests, the law does not require that he later be given one when he decides he is ready to submit." This conclusion is consistent with the standard set forth in *Beck* for determining whether a driver in fact refuses to take a test:

> Whether the declination is accomplished by verbally saying, "I refuse," or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of *qualified or conditional consent or refusal,* does not make a difference.

*Beck,* 597 P.2d at 1338 (quoting Spradling v. Deimeke, 528 S.W.2d 759 (Mo. 1975)). (Emphasis added.) Thus, pursuant to NRS 484.386(3), we conclude that Brough refused to submit to a blood test as a matter of law.

The DMV contends that the implied consent statute should be liberally construed in order to promote the legislative policy of removing intoxicated drivers from Nevada's highways. Galvan v. State, 98 Nev. 550, 655 P.2d 155 (1982). The DMV also points out that the sobriety test should be administered as soon as possible after the individual has been stopped on the road and placed under arrest because the effectiveness and reliability of the tests diminish with the passage of time. *McCharles,* 99 Nev. at 833, 673 P.2d at 489. We agree.

Peppley read Brough the implied consent admonition three times. And Brough stated that he understood the admonition after Peppley's third reading. Moreover, this court has consistently followed a liberal interpretation of the implied consent laws for sound public safety reasons. *See, e.g.,* Schroeder v. State, Dep't of Motor Vehicles, 105 Nev. 179, 772 P.2d 1278 (1989); *Galvan,* 98 Nev. at 553, 655 P.2d at 156. Here, a test five hours after Brough's arrest would not have been indicative of his blood alcohol content at the time of his arrest.

The DMV suggests this case is similar to *Schroeder* where this court held that eventual consent to submit to an evidentiary test did not vitiate a prior refusal. This contention has merit.

In *Schroeder,* the drunk driver initially refused to submit to an evidentiary test until after consulting with his attorney. After 40 minutes, Schroeder expressly asked to submit to a test. In rejecting Schroeder's claim, this court reasoned that "no sound reason exists to give a driver the opportunity to delay a test to his benefit, and which would be contrary to the implied consent statute's purpose of obtaining an accurate indication of his condition." *Schroeder,* 105 Nev. at 182, 772 P.2d at 1280. This case is stronger than *Schroeder* because here, there is no evidence in the record that Brough ever requested to submit to an evidentiary test, even after he was examined by the doctor. Moreover, an officer has no duty to renew an offer of testing after it has been refused. Sigfrinius v. Commissioner of Public Safety, 378 N.W.2d 124, 127 (Minn.App. 1985). Therefore, we conclude that the hearing officer's decision is based upon substantial evidence. State Dep't Mtr. Veh. v. Jenkins, 99 Nev. 460, 663 P.2d 1186 (1983).

Under these circumstances, given Nevada's longstanding policy of removing intoxicated drivers from our highways, we agree with the DMV's contention that there is substantial evidence that Brough failed to submit to an evidentiary test for purposes of NRS 484.386(3). *Schroeder,* 105 Nev. at 182, 772 P.2d at 1280 (quoting Davis v. State, 99 Nev. 25, 27, 656 P.2d 855, 856 (1983)).

Accordingly, we reverse the order of the district court and remand this matter for further proceedings consistent with the views expressed in this opinion.