No. 85,011

STATE OF KANSAS, *Appellant*, v. JOHN V. MURRY, a/k/a JOHN MURRAY, a/k/a JOHN V. MURRAY II, *Appellee*.

(21 P.3d 528)

Opinion filed April 20, 2001.

*Joe Shepack*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Michael S. Holland II*, of Holland and Holland, of Russell, argued the cause, and *Michael S. Holland*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: The State appeals on a question reserved, pursuant to K.S.A. 22-3602(b)(3), from a decision suppressing evidence of a blood sample taken from the defendant, John V. Murry, prior to his arrest.

On April 25, 1999, Murry was driving his vehicle in Ellsworth County, Kansas. His vehicle left the roadway and crashed into a culvert embankment. Murry was trapped in the vehicle and could not extricate himself. His vehicle was "totaled." Ellsworth County Deputy Sheriff Jaime Montoy was called to the scene of the accident. Montoy followed Murry to the Ellsworth County Hospital where he was transported by an EMT crew. Montoy suspected Murry had been driving while under the influence of alcohol. This issue has never been disputed. At the hospital, Montoy asked Murry to consent to a blood alcohol test. Murry replied, "I don't know what's going on, I'm starting to fade." A sample of blood was taken from Murry, despite the lack of consent and despite the fact that he was not under arrest at the time.

Murry filed a motion to suppress the blood sample evidence, arguing that he had not consented and that he had not been under arrest at the time the blood sample was taken. The trial court ruled that Murry had not consented to the taking of the blood sample and therefore granted the motion. In doing so, the trial court cited K.S.A. 2000 Supp. 8-1001 and *State v. Gordon*, 219 Kan. 643, 549 P.2d 886 (1976), for the proposition that a suspect must be placed under arrest before a blood sample can be taken without the suspect's consent. A motion to reconsider filed by the State was denied.

Murry pled guilty to three other charges. However, the driving under the influence charge was dismissed. This appeal was transferred to this court pursuant to K.S.A. 20-3018(c).

The State argues that the district court erred in suppressing evidence of Murry's blood sample taken before Murry was placed under arrest.

This case involves the interpretation of K.S.A. 2000 Supp. 8-1001. Interpretation of statute is a question of law over which this court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

This case also involves analysis of the Fourth Amendment of the United States Constitution. Our review is unlimited. *State v. Saleem*, 267 Kan. 100, 107, 977 P.2d 921 (1999).

The trial court relied on *Gordon* in ruling that the blood sample evidence was not admissible because Murry was not under arrest at the time. *Gordon* was rendered moot after the legislature amended K.S.A. 8-1001 in 1985. Prior to *Gordon*, K.S.A. 8-1001 (Weeks 1975) read in pertinent part:

"Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his or her blood *whenever he or she shall be arrested or otherwise taken into custody* for any offense involving operating a motor vehicle under the influence of intoxicating liquor in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was driving under the influence of intoxicating liquor." (Emphasis added.)

In 1976, in *Gordon*, this court held that evidence of a blood alcohol test was inadmissible where the defendant was not under arrest or in custody at the time the blood test was administered. In 1985, the legislature amended K.S.A. 8-1001 and eliminated the "arrest" requirement. The current version of the statute, K.S.A. 2000 Supp. 8-1001, reads in pertinent part:

"(a) Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. . . . A person who is dead or unconscious shall be deemed not to have withdrawn the person's consent to such test or tests, which shall be administered in the manner provided by this section.

"(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a) if the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, or to believe that the person was driving a commercial vehicle . . . while having alcohol or other drugs in such person's system; and *one of the following conditions exists:* (1) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both . . . in violation of a state statue or a city ordinance; or (2) *the person has been involved in a vehicle accident or collision resulting in property damage, personal injury or death.*" (Emphasis added.)

Following the legislative changes in 1985, 8-1001 no longer requires an arrest. If the person has been involved in a "vehicle accident or collision resulting in property damage, personal injury or

death," an arrest is not required. The trial court erred in interpreting 8-1001 and applying *Gordon.*

Despite statutory language authorizing the taking of the blood sample, any such bodily invasion must still be constitutionally sound. The Fourth Amendment is implicated when blood samples are drawn from the body.

"The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." The extraction of a blood sample is both a search of the person and a seizure of an effect. The extraction implicates constitutional guarantees against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution. *Schmerber v. California,* 384 U.S. 757, 767, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

The State argues that the U.S. Supreme Court decision in *Schmerber* controls the outcome of this case. In *Schmerber,* the defendant was arrested at a hospital after suffering injuries in an automobile accident. Schmerber had been driving the car involved in the accident. At the request of police officers, a blood sample was taken from Schmerber and analyzed for blood alcohol content. Officers did not have a warrant to remove the blood from the body, although Schmerber was under arrest. The blood alcohol test indicated that Schmerber was intoxicated at the time he was driving. At trial, Schmerber moved to suppress the evidence of the blood alcohol test, arguing, among other things, that taking blood out of his body was a violation of his Fourth Amendment right to be free from unreasonable searches and seizures. The Court held that Schmerber's Fourth Amendment rights were not violated when blood was drawn from his body and stated:

> "The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' [citation omitted]. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. *Given these special facts,*

*we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.*

"Similarly, we are satisfied that the test chosen to measure petitioner's blood-alcohol level was a reasonable one. Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. [Citation omitted.] Such tests are a commonplace in these days of periodic physical examination and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain. Petitioner is not one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing, such as the 'breathalyzer' test petitioner refused. . . .

"Finally, the record shows that the test was performed in a reasonable manner. Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain.

"We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. *It bears repeating, however, that we reach this judgment only on the facts of the present record.* The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." (Emphasis added.) 384 U.S. at 770-72.

*Schmerber*, therefore, requires application of a three-part test in order to determine whether blood alcohol evidence can be taken from a suspect without a warrant. The three requirements are: (1) There must be exigent circumstances in which the delay necessary to obtain a warrant would threaten the destruction of the evidence; (2) the officer must have probable cause to believe that the suspect has been driving under the influence of alcohol; and (3) the procedures used to extract the blood must be reasonable.

Although the State has cited *Schmerber*, Murry argues that *Schmerber* stands for the proposition that a suspect must be *under arrest* before blood may be drawn from the body, and because he was not under arrest at the time of the blood draw in this case, the decision of the district court should be upheld. In other words,

Murry argues that *Schmerber* has a fourth requirement, that is, that the officer must arrest the suspect before the sample may be taken. Murry points to language in the *Schmerber* decision which indicates that the holding is limited to the facts of the case and that in *Schmerber*, the defendant was under arrest at the time blood was drawn.

Although in *Schmerber* the defendant was under arrest at the time blood was taken from his body, a closer reading of the opinion and an analysis of subsequent case law indicate that whether the defendant was under arrest is not relevant in determining the admissibility of blood alcohol evidence. It appears that what the Court in *Schmerber* was really concerned about was the level of intrusiveness and not whether the defendant was under arrest, as the analysis is *Schmerber* begins with a discussion of exigent circumstances and not with a search subsequent to a valid arrest. See also *State v. Williams*, 15 Kan. App. 2d 656, 664-65, 815 P.2d 569 (1991) (holding that order requiring defendant to submit semen violated Fourth Amendment right to be free from unreasonable searches and seizures and suggesting that the reason *Schmerber* was limited to the "special facts" was a concern for the nature of the bodily intrusions and the defendant's right to privacy).

In a decision subsequent to *Schmerber*, the United States Supreme Court clarified the language in *Schmerber*. In *Cupp v. Murphy*, 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000 (1973), the Court further discussed and applied the holding in *Schmerber*. In *Cupp*, the defendant Murphy went to a police station to discuss the strangulation death of his wife earlier that evening. While talking with the police, officers noticed a dark spot, which appeared to be blood, on Murphy's finger. Officers knew that Murphy's wife had sustained lacerations on her neck and asked Murphy for a sample of some scrapings from under his fingernails. Murphy declined but officers obtained a sample, over his protest, despite having no warrant and not placing Murphy under arrest. Indeed, Murphy was not arrested until approximately 1 month later. Tests revealed that Murphy had traces of the victim's blood and skin as well as fabric from her nightgown under his fingernails. Over his

objection, the evidence was subsequently admitted at trial and Murphy was convicted of murder.

The *Cupp* Court, referring to *Schmerber*, held that the warrantless seizure of Murphy's person and the search of his fingernails was not violative of the Fourth Amendment, despite the fact that Murphy had not been under arrest at the time the fingernail scrapings were taken. In applying the three-prong test in *Schmerber*, the Court's decision turned on the destructibility of the evidence and the exigency created by the fact that such evidence deteriorates or could be readily destroyed. The exigency, the court stated, justified the warrantless search for the very limited purpose of preserving the "evanescent" evidence. 412 U.S. at 296.

The Supreme Court of Nevada in *Galvan v. State*, 98 Nev. 550, 655 P.2d 155 (1982), limited the standard in *Schmerber* to a three-prong test and did not recognize a fourth "arrest prong." In *Galvan*, the defendant was involved in an automobile accident when he drove his truck through an intersection and collided with another vehicle traveling on the other road. Galvan sustained serious injury and was transported to a hospital. After smelling alcohol on Galvan's breath, officers requested hospital personnel to draw blood for a blood alcohol test. No search warrant was obtained prior to extracting blood from Galvan's body, and Galvan was not under arrest at the time. Indeed, Galvan was not placed under arrest until 4 days later. Galvan's blood alcohol level was .263 percent.

Galvan moved the trial court to suppress evidence of the blood sample as being violative of his Fourth Amendment rights. The trial court denied the motion and subsequently found him guilty of driving under the influence of intoxicating liquor and causing the death of, or substantial bodily harm to, another person. On appeal, Galvan argued that the trial court erred in refusing to suppress the blood sample evidence. The Nevada Supreme Court rejected the idea that *Schmerber* required the defendant to be under arrest at the time blood is drawn from the body. The Nevada Supreme Court held that the trial court correctly denied Galvan's motion to suppress and stated:

"In addition, we reject appellant's argument that the Fourth Amendment requires an arrest prior to a blood alcohol test. We recognize that this question has

resulted in a split in authority among those courts which have examined the constitutional requirement for an arrest. [Citation omitted.] Many of those courts which have subscribed to a Fourth Amendment arrest requirement, despite a defendant's unconscious condition, have relied on *Schmerber v. California*, 384 U.S. 757 (1966). [Citations omitted.]

. . . .

"We do not believe, however, that the *Schmerber* decision holds that arrest is an absolute prerequisite to a blood test for alcohol. We decline to impose such an absolute requirement. The fruits of searches performed without a warrant, a prior arrest or consent should only rarely be admitted into evidence if a defendant's Fourth Amendment protections are to be respected. However, there may exist exigent circumstances which validate a limited search such as the test performed on Galvan. [Citations omitted.]

". . . There appears to be no dispute that probable cause existed to arrest Galvan for driving while under the influence of alcohol prior to the test. The officer, faced with the inevitable and rapid destruction of the evidence and Galvan's unconsciousness, could reasonably have believed that he was confronted with an emergency, so that he could not delay by obtaining a warrant or waiting until Galvan regained consciousness.

"Thus, we determine that there was neither a violation of [Nevada's consent to draw blood statute] nor constitutional infirmity in admitting the blood sample evidence at trial." 98 Nev. at 554.

The Supreme Court of Oregon also rejected the idea that the holding in *Schmerber* is limited to situations where the defendant is under arrest at the time blood is drawn in *State v. Milligan*, 304 Or. 659, 667-68, 748 P.2d 130 (1988). In *Milligan*, the defendant drove his car into a power pole killing his passenger. Milligan was interviewed by police officers at the scene of the accident. Officers smelled alcohol on Milligan's breath. Milligan was taken to the hospital where officers obtained two blood samples without his consent. Milligan was not under arrest at the time the blood was drawn from his body. The blood alcohol test revealed that Milligan was driving while intoxicated. Milligan filed a pretrial motion to suppress the blood sample evidence, which the trial court denied. Milligan was convicted of criminally negligent homicide. On appeal, Milligan argued that the blood evidence was taken in violation of his Fourth Amendment rights. The Oregon Supreme Court held that *Schmerber* does not require an arrest as a prerequisite for the drawing of blood for a blood alcohol test. In doing so, the court stated:

"We emphasize that, although the *Schmerber* Court referred to the search as 'incident to petitioner's arrest,' its holding did not turn on the existence of an arrest. Rather, the Court relied on the exigency created by the evanescent nature of blood alcohol and the danger that important evidence would disappear without an immediate search.

. . . .

"From a fair reading of [*Cupp v.*] *Murphy* and *Schmerber* together, we conclude that it is the evanescent nature of the evidence sought, not the existence or absence of an arrest, that constitutionally justifies the kind of action taken by the officers in this case. We hold that, under the federal constitution, an arrest as defined in statutory law is not required prior to the warrantless extraction of blood for the purposes of determining blood-alcohol content, so long as the extraction is based on probable cause sufficiently strong to have justified such an arrest." 304 Or. at 668-69.

The Ninth Circuit Court of Appeals in *United States v. Chapel,* 55 F.3d 1416 (9th Cir. 1995), further discussed whether a suspect must be under arrest before a blood sample may be taken from him or her in the absence of a warrant. The *Chapel* court agreed with the reasoning in *Galvan* and *Milligan,* stating:

"We now know from the Supreme Court's reasoning in [cases subsequent to *Schmerber*] that the seizure of blood in *Schmerber* 'fell within the exigent-circumstances exception to the warrant requirement.' [Citation omitted.] Seizures of evidence based on exigent circumstances do not, of course, have to be accompanied by an arrest. [Citation omitted.] Accordingly, an arrest is not essential to support the intrusion in the absence of a warrant, so long as the three explicit *Schmerber* requirements are met. Thus, the interpretation of *Schmerber* [which required a suspect to be under arrest at the time the sample is taken] is no longer sustainable in light of [subsequent Supreme Court cases.]

"The result we reach today does no violence to the Fourth Amendment or the protections it affords to those suspected of crime. Before a law enforcement officer may lawfully take a blood sample without consent or a warrant, he or she must have probable cause to believe that the suspect has committed an offense of which the current state of one's blood will constitute evidence. [Citation omitted.] The requirement of a contemporaneous arrest adds nothing to that constitutional protection; the probable cause threshold in these circumstances remains the same. [Citation omitted.] There is nothing about an arrest that aids the suspect.

"In addition to probable cause, the other *Schmerber* requirements remain in place. The officer must still reasonably believe that an emergency exists in which the delay necessary to obtain a warrant would threaten the loss or destruction of evidence. The procedures used to extract the sample must still be reasonable and in accordance with accepted medical practices. [Citation omitted.] Our ruling does nothing to the detriment of the accused." 55 F.3d at 1418-19.

Other courts have similarly held. See *United States v. Berry*, 866 F.2d 887, 891 (6th Cir. 1989) (reading *Schmerber* as an exigent circumstances case and not as requiring the suspect to be under arrest at the time a blood sample is taken); *State v. Salazar*, 146 Ariz. 547, 551, 707 P.2d 951 (1985) (holding that blood sample taken from defendant who was not under arrest at the time did not violate Fourth Amendment because of exigent circumstances); *People v. Sutherland*, 683 P.2d 1192, 1195-96 (Colo. 1984) (citing *Schmerber* and holding that the formal arrest of the defendant is not a prerequisite to the obtaining of a blood sample); *Filmon v. State*, 336 So. 2d 586, 590-91 (Fla. 1976) (lawful arrest is not a prerequisite to taking of blood sample from defendant as long as the requirements in *Schmerber* are met); *State v. Findlay*, 259 Iowa 733, 739, 145 N.W.2d 650 (1966) (Fourth Amendment not violated where blood sample was taken from defendant prior to actual arrest under the "stringent and limited conditions" at the hospital); *DeVaney v. State*, 259 Ind. 483, 487-88, 288 N.E.2d 732 (1972) (holding that defendant was not required to be placed under arrest and read his *Miranda* rights prior to the taking of the blood sample); *State v. Graham*, 278 So. 2d 78, 80 (La. 1973) (citing *Schmerber* and holding that Fourth Amendment was not violated where blood sample was taken from defendant prior to his arrest); *State v. Oevering*, 268 N.W.2d 68, 72-73 (Minn. 1978) (applying the three-prong test in *Schmerber* and holding that there is no fourth prong requirement that the suspect be under arrest when the blood sample is taken); *Wilhelmi v. Director of Dept. of Transp.*, 498 N.W.2d 150, 154 (N.D. 1993) (noting that "well-developed precedent" holds that there is no Fourth Amendment violation where a blood sample is taken from a suspect prior to actual arrest); *State v. Langevin*, 304 Or. 674, 678-79, 748 P.2d 139 (1988) (citing *Milligan* and holding that defendant's Fourth Amendment rights were not violated when blood sample was taken from him prior to arrest); *Aliff v. State*, 627 S.W.2d 166, 169-70 (Tex. Ct. App. 1982) (citing both *Schmerber* and *Cupp* and holding that Fourth Amendment was not violated when blood sample was taken from defendant prior to his arrest); *State v. Smith*, 84 Wash. App. 813, 819, 929 P.2d 1191 (1997) (reading *Schmerber* as an exigent

circumstances case and not recognizing a requirement that the suspect must be under arrest in order to meet Fourth Amendment requirements); and *Van Order v. State*, 600 P.2d 1056, 1058 (Wyo. 1979) (citing *Cupp* and noting that "[w]ell reasoned authority exists" which holds that the Fourth Amendment rights of a defendant are not violated when a blood sample is taken prior to arrest so long as the three requirements in *Schmerber* are met).

Having determined that *Schmerber* and *Cupp* do not require an arrest prior to the taking of a blood sample, we turn to the remaining issues. Determination of this case turns on application of the three-prong test described in *Schmerber* and applied in *Cupp*. All three requirements have been met in this case. First, there were exigent circumstances which justified the taking of the blood sample. Second, Montoy had probable cause to believe that Murry had been driving under the influence. This point has never been controverted. Third, the procedure used to extract the blood was reasonable.

The trial court erred in ruling that the evidence of the blood sample was inadmissible. Murry's Fourth Amendment rights would not have been violated by admission of the evidence at trial.

Insomuch as language contained in *State v. Brunner*, 211 Kan. 596, 507 P.2d 233 (1973), implies that an arrest is constitutionally required under the Fourth Amendment before a blood sample may be taken, language to that effect is hereby disapproved.

The trial court erred in ruling that the blood sample was taken in violation of Murry's Fourth Amendment rights.

Appeal sustained.