(207 P.3d 281)
No. 99,992

STATE OF KANSAS, *Appellee*, v. JOHNNIE C. DAVIS, *Appellant*.

Opinion filed May 22, 2009.

*Michael S. Holland II,* of Holland and Holland, of Russell, for appellant.

*Richard N. Raleigh,* county attorney, and *Stephen N. Six,* attorney general, for appellee.

Before RULON, C.J., MALONE and GREENE, JJ.

RULON, C.J.: Defendant Johnnie C. Davis appeals his conviction for driving under the influence of alcohol (DUI), contending the his blood was not drawn in a medically reasonable manner. We affirm.

## Underlying Facts

On September 23, 2006, Trooper Mitch Clark of the Kansas Highway Patrol was en route to the jail in Barber County after making an arrest when a vehicle driven by the defendant pulled out in front of him, failing to yield. Trooper Clark activated his emergency signals and stopped the defendant's vehicle. When Trooper Clark approached the defendant to request defendant's license and registration, Trooper Clark smelled a strong alcohol odor; saw the defendant's eyes were bloodshot and watery; and saw an open beer can behind the defendant's seat. The defendant told Trooper Clark he had consumed about four or five beers. Trooper Brian Quick arrived on the scene, and Trooper Clark asked Trooper Quick to take over the investigation of the defendant so Trooper Clark could finish transporting his previous arrestee to the jail.

Trooper Quick approached the defendant, identified the defendant with defendant's driver's license, and asked the defendant if he had been drinking. The defendant said he had had about four beers. Trooper Quick noticed the defendant's eyes were bloodshot, defendant's speech was slightly slurred, and there was the odor of an alcoholic beverage. Trooper Quick performed sobriety tests on the defendant.

After finishing the sobriety tests, Trooper Quick arrested the defendant for DUI and transported the defendant to the Barber County Sheriff's Department. Trooper Quick gave the defendant a copy of the implied consent advisory and asked the defendant to take a blood test. The defendant consented, and the defendant's blood draw was completed in the kitchen area of the sheriff's office and sent to the Kansas Bureau of Investigation (KBI) for analysis. The KBI lab report would later show a blood alcohol level of .12.

Trooper Quick issued the defendant a citation for DUI under K.S.A. 2006 Supp. 8-1567, transportation of liquor in open container (open container) under K.S.A. 2006 Supp. 8-1599, and failing to stop when emerging from alley, building, private road, or driveway (failure to stop) under K.S.A. 8-1555.

At trial before a magistrate judge the State presented the testimony of Trooper Clark and Trooper Quick, as well as the testimony of Heide Alojacin, the medical technologist who completed and signed the defendant's blood draw form. Alojacin testified the form contained her handwriting, but she could not recall working on the date the blood was drawn and had no recollection of the defendant.

The defendant objected to the admission of the KBI lab report on the blood sample, arguing the State failed to provide sufficient foundation for the report because Alojacin could not remember the draw and therefore there was no evidence the draw was performed in a medically reasonable manner.

Eventually, the magistrate judge found the "means and procedures employed" in taking the blood draw "did not violate Fourth Amendment standards of reasonableness." The magistrate judge found the lab test report was admissible and found the defendant guilty of DUI and open container. The defendant was found not guilty of failure to stop. The defendant timely appealed to the district court. The parties waived jury trial and stipulated the district court could decide the case based upon the transcript of trial before the magistrate judge and the briefs previously submitted by the parties.

The district court found the "drawing of blood by a medical technologist who regularly works in that capacity at the local hospital using the equipment described is appropriate and reasona-

ble." Accordingly, the district court found the defendant guilty of DUI and open container.

The defendant timely appealed.

## Medically Reasonable Manner

On appeal, the defendant argues the State failed to meet the prosecutor's burden to establish sufficient foundation for the admission of the defendant's blood test results. Specifically, the defendant contends the State was not able to show the defendant's blood was drawn in a "medically reasonable manner," because the medical technician who drew the blood was unable to recall the draw.

In response, the State contends the prosecution should not be required to show a blood draw was done in a medically reasonable manner unless the defendant objects on those grounds at the time the blood is drawn or through a subsequent motion. The defendant did neither here. The State contends the defendant consented to the blood draw and there is no evidence in the record suggesting the blood draw was *not* completed in a medically reasonable manner.

The general standard of review for questions regarding foundation is as follows: A district court usually has considerable discretion in evidentiary rulings regarding foundation evidence, and its decisions in this regard are reviewed for an abuse of this discretion. *City of Overland Park v. Cunningham*, 253 Kan. 765, 772, 861 P.2d 1316 (1993). The question of the adequacy of an evidentiary foundation is a question of fact and is reviewed for substantial competent evidence supporting the district court's finding. 253 Kan. at 773.

This case involves a constitutional search and seizure question. Application of the Fourth Amendment to the United States Constitution in the context of our DUI statutes is a question of law over which this court has unlimited review. See *State v. Murry*, 271 Kan. 223, 224-33, 21 P.3d 528 (2001).

The drawing of a blood sample from a criminal suspect "implicates constitutional guarantees against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the

United States Constitution." *Murry*, 271 Kan. at 226; see *Schmerber v. California*, 384 U.S. 757, 767, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966). Any warrantless search is considered unreasonable unless it falls within one of the recognized exceptions to this rule. *State v. Thompson*, 284 Kan. 763, 776, 166 P.3d 1015 (2007). A warrantless blood draw from a DUI suspect falls within such an exception so long as the blood draw meets three requirements: (1) There are exigent circumstances in which the delay necessary to obtain a warrant would threaten the destruction of the evidence; (2) the officer has probable cause to believe the suspect has been driving under the influence of alcohol; and (3) reasonable procedures are used to extract the blood. *Murry*, 271 Kan. at 227. The State bears the burden of proving the lawfulness of a search and seizure. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006).

The defendant concedes, in DUI cases, exigent circumstances almost always exist to satisfy the first requirement for a warrantless blood draw. As we understand this, defendant does not challenge exigent circumstances existed here. Neither does the defendant challenge the State satisfied the second requirement in showing the troopers had probable cause to suspect the defendant of DUI. Instead, the defendant contends the State was unable to satisfy the third requirement and show the blood draw was done in a medically reasonable manner, because the medical technician who drew the defendant's blood could not specifically remember drawing the defendant's blood and so was unable to testify as to the manner in which the blood draw was completed.

Before addressing the defendant's argument, we first consider the State's contention the prosecution had no burden to show the blood draw was taken in a medically reasonable manner because the defendant consented to the blood draw and failed to object at the time of the draw or through a motion.

As previously noted, the defendant concedes the State does not have to satisfy the exigency requirement if there is consent, but argues consent does not abrogate the need for the State to show the test was done in a medically reasonable manner.

Probable cause plus exigent circumstances is one exception to the warrant requirement in Kansas. Consent constitutes another,

separate exception. See *State v. Fitzgerald*, 286 Kan. 1124, 1127, 192 P.3d 171 (2008). In setting forth the three-part test for warrantless blood alcohol evidence in *Murry*, our Supreme Court essentially listed the probable cause plus exigent circumstances exception and added the requirement the procedures used to extract the blood be reasonable. See *Murry*, 271 Kan. at 227. Consequently, consent could effectively replace the exigent circumstances and probable cause requirements. However, the State concedes, there is no authority indicating consent would abrogate the State's responsibility to show the blood draw was performed in a reasonable manner.

The questions of probable cause and exigency are determined by circumstances in place before a suspect gives his or her consent to a blood draw. On the other hand, whether a blood draw is conducted in a reasonable manner may be an ongoing question left open during the course of and immediate aftermath of the blood draw, all of which occurs after a suspect has consented to the draw. Consequently, a defendant's consent should not necessarily relieve the State of its burden of showing the blood draw was conducted in a medically reasonable manner.

Regarding the defendant's failure to object at the time of the blood draw, there is no controlling authority requiring such an objection. Here, the defendant properly raised an objection to the admission of the exhibit, on foundational grounds, after the State's witness was unable to recall and testify to the manner of the defendant's blood draw. The California case cited by the State to support this argument addresses the requirements for a suspect to validly refuse to submit to a certain manner of testing. See *Wegner v. Department of Motor Vehicles*, 271 Cal. App. 2d 838, 840-41, 76 Cal. Rptr. 920 (1969). *Wegner* does not address the issue here, which involves the State's burden to demonstrate the lawfulness of a search and seizure by showing the three requirements set forth by our Supreme Court in *Murry* were met.

We now turn to the merits of the defendant's argument on appeal. The requirements our Supreme Court set forth in *Murry* were drawn from the United States Supreme Court's decision in

*Schmerber*. Specifically, the third *Murry* requirement was derived from the following passage in *Schmerber*:

"Finally, the record shows that the test was performed in a reasonable manner. Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of a stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain." 384 U.S. at 771-72.

See *Murry*, 271 Kan. at 227.

The factors to be considered in determining the reasonableness of the procedure used to draw the suspect's blood include the qualifications of the person drawing the blood, the environment in which the blood was drawn, and the manner in which the blood was drawn.

Furthermore, the Kansas implied consent statute provides the blood draw of a DUI suspect may be performed only by persons with certain qualifications. See K.S.A. 2008 Supp. 8-1001(c). Such qualified persons include physicians, physician's assistants, or a person acting under the direction of either; a registered or licensed practical nurse; any qualified medical technician; or a phlebotomist. K.S.A. 2008 Supp. 8-1001(c). As we understand, the defendant is not challenging the qualifications of Alojacin under this statute. Rather, the defendant is focused on Alojacin's inability to testify as to the specific manner of the blood draw in this case.

The testimony before the district court showed the blood draw was conducted by Alojacin, a medical technologist who worked in the lab at Medicine Lodge Memorial Hospital for about 3 years prior to taking the defendant's blood. Alojacin is a licensed medical technologist. As part of Alojacin's job at the hospital, she draws blood on a daily basis. The hospital lab is sometimes called by the sheriff's office, as in this case, to come into the office and do a blood draw. The sheriff's office provides needles, syringes, gloves, iodine, cotton, and tape tourniquet for the draws. Alojacin estimated she had previously performed about 20 draws at the sheriff's office.

Alojacin identified her handwriting on the section of the defendant's blood draw form that is designated for completion by medical personnel. Although Alojacin could not remember the defendant or the blood draw, the blood draw form Alojacin completed indicates Alojacin conducted the blood draw.

Trooper Quick observed the blood draw and testified the blood draw took place in the kitchen area behind the sheriff's dispatch office, using a blood tube from a kit provided by the KBI. The kit contains the blood tube, evidence tape, and a plastic container and a baggy used to seal the blood sample so there is no chance of the blood tube breaking or spilling during transport. Once Alojacin drew the blood, she handed the sample to Trooper Quick, who labeled the sample and sent the sample to the KBI for testing.

There was no evidence presented suggesting the blood draw here was conducted in anything other than a medically reasonable manner. Rather, the testimony showed the blood draw was conducted by a licensed medical technologist, using a kit provided by the KBI, in the sheriff's office. While Alojacin was unable to specifically remember the defendant's blood draw, such an inability is not unexpected when a routine blood draw is taken by someone who performs such draws on a daily basis.

Reasonableness in the Fourth Amendment context depends on the totality of the facts and circumstances in each case. See *State v. McClelland*, 215 Kan. 81, 83, 523 P.2d 357 (1974). Here, the facts and circumstances discussed above (a licensed medical technologist taking a routine blood draw) are sufficient to permit an inference the blood draw was taken in a medically reasonable manner, given there is no evidence suggesting the contrary.

Affirmed.