COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| KEVIN WILLIS, | | No. 08-12-00246-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 384th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20110D03100) |
| | § | |

# **O P I N I O N**

Kevin Willis appeals his conviction of felony driving while intoxicated. A jury acquitted Appellant of two counts of intoxication manslaughter (Counts I and II) but found him guilty of felony driving while intoxicated (Count III). The jury assessed his punishment at imprisonment for a term of three years and a fine of $1,000. For the reasons that follow, we affirm.

## **FACTUAL SUMMARY**

The only issues presented in this appeal are the sufficiency of the evidence to prove that Appellant is the same person as the person named in a 2005 California conviction used to elevate the instant DWI offense to a felony and the admissibility of the blood test results. We will restrict our discussion of the facts to the evidence relevant to these issues. At around 3:45 a.m. on November 16, 2007, a Dodge Ram 3500 driven by Appellant collided with the rear of a Ford

Explorer killing its occupants, John Derrico and Emiliano Rocha. Javier Jimenez, an El Paso County Deputy Sheriff, received a page at 3:50 a.m. and went to the scene of the accident. After investigating the accident and videotaping the scene, Jimenez met with Appellant at 7:20 a.m. Jimenez advised Appellant that he was being arrested on two counts of manslaughter, patted him down, and read the *Miranda*[1] warnings to him. During the pat-down, Jimenez could smell an odor of alcohol on Appellant's person. Jimenez noticed that Appellant's eyes were bloodshot and glassy. Appellant admitted he had been drinking prior to the accident. Jimenez placed Appellant in the back of a patrol car and transported him to a hospital for a blood draw. After arriving at the hospital at 7:45 a.m., Jimenez met with Deputy Cordero and they advised the medical staff they were there to obtain a blood specimen from Appellant. Jimenez then read the DIC-24 statutory warning to Appellant. Appellant signed the form indicating he consented to giving a specimen of his blood. Appellant also signed a consent form included with the DPS blood kit. In Jimenez's opinion, Appellant was coherent when he consented to giving a blood specimen and Jimenez did not threaten or coerce him into signing the consent forms.

At 8:20 a.m., which was approximately four and one-half hours after the accident, a phlebotomist, Francisca Contreras, began the procedure for drawing the blood from Appellant using the vials provided in the DPS blood kit. Contreras had some initial difficulty locating a vein and she was unable to draw blood on the first two attempts and drew an insufficient amount on the third attempt. Finally, on the fourth attempt, Contreras drew the required amount of blood. Jimenez recalled that Contreras had to use four different locations on Appellant's hands and lower arms to draw the blood. Contreras gave all four vials to Jimenez and he mixed the anticoagulant powder with the blood by turning each vial eight times. Jimenez placed the seals on the vials and later placed them in the evidence locker. The evidence technician, Richard

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Pryor, took custody of the evidence. Subsequent testing showed that Appellant's blood alcohol content was .07 grams of alcohol per 100 milliliters of blood. Jimenez transported Appellant to the Sheriff's Office and obtained a video-recorded statement from him.

An El Paso County grand jury returned an indictment against Appellant charging him with two counts of intoxication manslaughter (Counts I and II) and one count of felony DWI (Count III). The DWI offense in Count III was elevated from a misdemeanor to a felony based on allegations Appellant had twice before been convicted of driving while intoxicated. To prove these jurisdictional elements of the felony DWI offense, the State introduced evidence showing Appellant had been convicted of driving under the influence in California in 2000 and 2005. A jury acquitted Appellant of Counts I and II, but convicted him of felony DWI.

## SUFFICIENCY OF THE EVIDENCE
## TO PROVE THE PRIOR CONVICTION

In Issue One, Appellant contends that the trial court abused its discretion by admitting a 2005 California conviction for driving under the influence (DUI), which is one of two prior convictions used to elevate the offense to a felony, because the evidence is insufficient to link him to the prior conviction.[2] As noted by the State, it is unclear whether Appellant's issue is directed at the admissibility of the prior conviction or the sufficiency of the evidence supporting his felony DWI conviction. The State asserts that the issue should be construed as attacking the admissibility rather than the sufficiency of the evidence. This question must be answered first because it determines the standard of review and the framework for our analysis.

In *Rosales v. State*, we observed there is a distinction between a determination that a prior conviction has been sufficiently linked to a defendant to permit its admission and a determination

---

[2] Issue One states: "The trial court abused its discretion when it permitted a 2005 driving while intoxicated conviction without proper identification that Willis was linked to that conviction."

that the evidence is sufficient to prove a prior conviction. *Rosales v. State*, 867 S.W.2d 70, 72 (Tex.App.--El Paso 1993, no pet.). The first inquiry is procedural and is primarily one of conditional relevancy, while the second inquiry is one of sufficiency. *Id.* An issue challenging a trial court's decision to admit into evidence a prior conviction is reviewed for an abuse of discretion[3] while an issue challenging the sufficiency of the evidence to prove a prior conviction is reviewed under the familiar *Jackson v. Virginia*[4] sufficiency standard. *Zimmer v. State*, 989 S.W.2d 48, 50 (Tex.App.--San Antonio 1998, pet. ref'd)(applying the *Jackson* standard to a sufficiency review of prior offenses alleged as jurisdictional elements of the felony DWI offense).

Although Appellant's issue is stated in terms of the admissibility of the prior conviction and invokes the abuse of discretion standard, the standard of review section of the brief and entire body of the argument associated with Issue One challenges the sufficiency of the evidence to prove these jurisdictional elements beyond a reasonable doubt. Following his summary of the argument, Appellant's brief includes a section which addresses the two standards of review at issue in the case, legal sufficiency and abuse of discretion. The abuse of discretion discussion appears to be related to Appellant's second issue which challenges the trial court's denial of his motion to suppress. In the argument section of Issue One, Appellant relies exclusively on three cases which address sufficiency of the evidence to prove a prior conviction: *Flowers v. State*, 220 S.W.3d 919 (Tex.Crim.App. 2007), *Zimmer*, and *Prihoda v. State*, 352 S.W.3d 796 (Tex.App.--San Antonio 2011, pet. ref'd). At first reading, Appellant's prayer indicates he intended to raise a sufficiency challenge in that he requests we "reverse the trial court's ruling,

---

[3] *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010)(stating appellate court reviews trial court's decision to admit evidence under the abuse of discretion standard).

[4] *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

and reform the trial court's judgment." If Appellant had meant to attack the admissibility of the evidence, his prayer would have requested that we reverse the judgment and remand for a new trial rather than asking that we reform the judgment.[5] We note that Appellant requests the same relief with respect to Issue Two which challenges the admissibility of the blood test evidence. Reformation of the judgment would not be the proper disposition if we were to sustain Issue Two. Nevertheless, after reading Appellant's brief as a whole and giving it a liberal construction, we conclude that Issue One challenges the sufficiency of the evidence to prove Appellant is the same person who was convicted of DUI in the 2005 California judgment. *See* TEX.R.APP.P. 38.9 (requiring appellate court to liberally construe briefing rules to allow consideration of arguments fairly included in a party's brief).

*Relevant Law and the Standard of Review*

A person commits the offense of DWI "if the person is intoxicated while operating a motor vehicle in a public place." TEX.PENAL CODE ANN. § 49.04(a)(West Supp. 2014). A DWI is a class B misdemeanor, but it may be elevated to a third degree felony if it is shown on the trial of the offense that the person has previously been convicted two times of any other offense relating to the operating of a motor vehicle while intoxicated. TEX.PENAL CODE ANN. § 49.09(b)(2). Elevating a DWI from a misdemeanor to a felony offense by using previous DWI convictions does not enhance punishment, but creates a new offense and vests the district court with jurisdiction. *Gibson v. State*, 995 S.W.2d 693, 696 (Tex.Crim.App. 1999); *Carroll v. State*, 51 S.W.3d 797, 799 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd). Thus, the two prior DWI offenses used to elevate the offense from a misdemeanor to a felony are necessary elements of the offense of felony DWI; they are jurisdictional, as opposed to mere enhancement allegations.

---

[5] Appellant does not specify how the judgment should be reformed but a fair reading of his brief indicates he intended to request that the judgment be reformed to reflect a conviction of DWI enhanced by only one prior conviction.

*Alami v. State*, 333 S.W.3d 881, 891 (Tex.App.--Fort Worth 2011, no pet.), *citing Martin v. State*, 200 S.W.3d 635, 640 (Tex.Crim.App. 2006) and *State v. Wheeler*, 790 S.W.2d 415, 416 (Tex.App.--Amarillo 1990, no pet.); *State v. Mewbourn*, 993 S.W.2d 771, 772 (Tex.App.--Tyler 1999, no pet.). The State must prove the two prior DWI convictions at the guilt-innocence stage of trial in order to obtain a felony DWI conviction. *See Gibson*, 995 S.W.2d at 696; *Alami*, 333 S.W.3d at 891; *Hampton v. State*, 977 S.W.2d 467, 469 (Tex.App.--Texarkana 1998, pet. ref'd).

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers*, 220 S.W.3d at 921. No specific document or mode of proof is required to prove these two elements. *Id.* While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's  admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 921-22. The proof that is adduced to establish that the defendant on trial is the same person named in the prior conviction "closely resembles a jigsaw puzzle." *Id.* at 923, *quoting Human v. State*, 749 S.W.2d 832, 835-36 (Tex.Crim.App. 1988)(op. on reh'g). Standing alone, the pieces usually have little meaning, but when fitted together, the pieces usually form the picture of the person who committed the alleged prior conviction or convictions. *Flowers*, 220 S.W.3d at 923; *Human*, 749 S.W.2d at 835-36. The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece. *Flowers*, 220 S.W.3d at 923.

Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle. *Id.* The trier of fact looks at the totality of the evidence admitted to determine (1) whether there was a previous conviction, and (2) whether the defendant was the person convicted. *Id.* If these two elements can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction.

In reviewing the sufficiency of the evidence to determine whether the State proved the elements of the offense beyond a reasonable doubt, we apply the *Jackson v. Virginia* standard. *Brooks v. State*, 323 S.W.3d 893, 895-96 (Tex.Crim.App. 2010), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under that standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id.* On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). The standard of

review as to the sufficiency of the evidence is the same for both direct and circumstantial evidence cases. *Id.*; *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.).

*The Evidence*

The indictment alleged Appellant committed the offense of driving while intoxicated by operating a motor vehicle in a public place while intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body (Paragraph A) and by having an alcohol concentration of .08 or more (Paragraph B). Both Paragraphs A and B alleged two prior convictions to elevate the offense to a felony:

> And the Grand Jurors further present that prior to the commission of the offense set forth in this indictment, the said Defendant had been convicted of two prior offenses relating to the operating of a motor vehicle while intoxicated, to wit: on the 2nd day of May, 2000, in the Superior Court of California, County of Fresno, California, in Cause No. T00901469-7, the said Defendant was duly and legally convicted of the offense of Driving Under the Influence; and on the 8th day of December, 2005, in the Superior Court of California, County of Santa Clara, California, in Cause No. FF513056, the said Defendant was duly and legally convicted of the offense of Driving Under the Influence with One Prior.

The State introduced into evidence a copy of Appellant's California driver's license which states his full name as Kevin Anthony Willis, Jr.[6] The information on the driver's license included the driver's license number, a photograph of Appellant, his California address, gender, hair color, height, weight, and date of birth. The State also introduced into evidence State's Exhibit 113 which is a packet of documents related to the 2000 DUI conviction from California. A fingerprint expert, Dale Fernandez, examined the known fingerprints of Appellant and compared them to the fingerprint contained on the judgment related to the 2000 DUI conviction.

---

[6] Recent amendments to the Rules of Appellate Procedure require the courts to protect sensitive data, such as a driver's license number, social security number, and date of birth, in both civil and criminal appeals. *See* TEX.R.APP.P. 9.9, 9.10. Issue One requires us to consider different items of documentary evidence and compare certain personal identifiers, including the driver's license number and date of birth shown on the exhibits. The opinion will not set forth the personal identifiers shown on each of the exhibits but will instead simply reflect whether the information matches.

Fernandez concluded that Appellant's right thumbprint matches the print on the 2000 DUI judgment. Further, the defendant information in State's Exhibit 113 identifies the defendant as Kevin Anthony Willis and sets forth his date of birth and California driver's license number. This information matches the information on Appellant's California driver's license number admitted into evidence as State's Exhibit 8. The trial court admitted State's Exhibit 113 into evidence.

To prove the second jurisdictional enhancement allegation, the State offered into evidence State's Exhibit 112, a packet of documents related to the 2005 California DUI conviction. The packet includes the judgment, the misdemeanor complaint, the DUI advisement of rights, waiver, and plea form ("the plea papers"), and the written notice to appear prepared by the arresting officer. The judgment related to the 2005 DUI conviction does not contain a fingerprint, but it reflects that the defendant's name is Kevin Anthony Willis, Jr., and it lists the defendant's California driver's license number and date of birth. All three of these identifiers match the information on Appellant's California driver's license. The judgment also reflects that the defendant entered a *nolo contendere* plea to the charged offense and judicially admitted he had a prior conviction as alleged in the complaint. The complaint alleged that the defendant had a prior 2000 DUI conviction in cause number "901469" in the California Superior Court, Fresno County. The trial court admitted the 2005 judgment over Appellant's objections.

This case presents a good example of the type of jigsaw puzzle first referred to by the Court of Criminal Appeals in *Human v. State*. Appellant does not challenge the jury's implicit finding that he is the same person as the defendant convicted in the 2000 DUI conviction, but we note that the jury's finding is supported by ample evidence, including the testimony of the fingerprint expert that Appellant is the same person as that defendant convicted in that case. The

judgment associated with the 2005 DUI conviction does not contain a fingerprint, but it recites the defendant's California driver's license number which matches the number of Appellant's driver's license. Further, the defendant's name and birthdate on the 2005 DUI conviction match the information on Appellant's driver's license. The jury could have found an additional connector between Appellant and the 2005 DUI conviction because the defendant in that case entered a plea of *nolo contendere* and judicially admitted to the prior conviction "as listed in the complaint". The complaint referenced in the judgment alleged that the defendant had been convicted in 2000 of DUI in cause number "901469" in the California Superior Court, Fresno County. That cause number is not identical, but a rational trier of fact could find that it sufficiently matches the cause number listed on the 2000 DUI conviction (T00901469-7) out of the California Superior Court in Fresno County. When the evidence is taken in the light most favorable to the jury's verdict and all reasonable inferences are drawn, it is legally sufficient to permit a rational trier of fact to find that Appellant is the same person as the defendant convicted in the 2005 DUI conviction as alleged in the indictment. *See Flowers*, 220 S.W.3d at 925 (finding evidence sufficient to prove the appellant was the same person as the defendant convicted in the prior DWI conviction where the evidence included a certified copy of the appellant's driver's license record, and a certified copy of a computer printout setting forth his criminal history which included the prior DWI conviction; the criminal history showed the particulars of the prior conviction and the defendant's name, the date of birth, address, social security number, and other personal descriptors, and that information matched the personal descriptors found on the Texas driver's license record for the appellant). Having found the evidence sufficient to support Appellant's conviction of felony driving while intoxicated, we overrule Issue One.

**ADMISSIBILITY OF BLOOD TEST RESULTS**

In Issue Two, Appellant argues that the trial court erred by admitting the blood alcohol test results because the manner and means employed in taking his blood were unreasonable under the Fourth Amendment. His argument is based upon the test for determining the validity of a compulsory blood test established by the United States Supreme Court in *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966) and adopted by the Court of Criminal Appeals in *State v. Johnston*, 336 S.W.3d 649, 658 (Tex.Crim.App. 2011).

*Standard of Review*

At a suppression hearing, the trial judge is the sole and exclusive trier of fact and may choose to believe or disbelieve any or all of the evidence presented before it. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex.Crim.App. 2011); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002). We review a ruling on a motion to suppress using a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997). Under this standard, the trial court's findings of historical fact must be afforded almost total deference provided they are supported by the record. *Valtierra*, 310 S.W.3d at 447; *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). We also defer to the court's determination of mixed questions of law and fact that turn on an assessment of a witness's credibility or demeanor. *Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673. We will review *de novo* the trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *See Valtierra*, 310 S.W.3d at 447; *Amador*, 221 S.W.3d at 673.

As a general rule, appellate courts view the evidence in the light most favorable to the trial judge's ruling, regardless of whether the judge granted or denied the suppression motion.

*State v. Woodard*, 341 S.W.3d 404, 410 (Tex.Crim.App. 2011). If the ruling is reasonably supported by the record and is correct under any theory of the law applicable to the case, the reviewing court will uphold it. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). Generally, we only consider the evidence adduced at the suppression hearing, but when the parties relitigate the suppression issue at the trial on the merits, as they did in this case, we consider all the evidence, from both the pretrial hearing and the trial, in our review of the trial court's ruling. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App. 2007).

*Validity of the Blood Draw*

The Fourth Amendment provides protection from unreasonable searches and seizures by government officials. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007). A warrantless search or seizure is *per se* unreasonable, unless it falls under a recognized exception to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009); *Walter v. State*, 28 S.W.3d 538, 541 (Tex.Crim.App. 2000). Consent is among the most well-established exceptions to the presumption that a warrantless search is unreasonable. *Johnson v. State*, 226 S.W.3d 439, 443 (Tex.Crim.App. 2007).

A blood draw is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966)*, State v. Johnston*, 336 S.W.3d 649, 658 (Tex.Crim.App. 2011). *Schmerber* established a two-part analysis for determining the legality of a compulsory blood draw and it requires a court to examine:

1. whether the police were justified in requiring the defendant to submit to a blood test; and

2. whether the means and procedures employed in taking the defendant's blood respected relevant Fourth Amendment standards of reasonableness.

- 12 -

*Schmerber*, 384 U.S. at 768, 86 S.Ct. at 1834; *see Johnston*, 336 S.W.3d at 658. The second part of the analysis contains two discrete questions. First, when resolving the reasonableness of the "means" employed, it must be determined whether the test chosen was reasonable. *Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836; *Johnston*, 336 S.W.3d at 658. Second, when resolving the reasonableness of the procedures employed, it must be determined whether the test was performed in a reasonable manner. *Schmerber*, 384 U.S. at 771-72, 86 S.Ct. at 1836; *Johnston*, 336 S.W.3d at 658.

The *Schmerber/Johnston* analysis applies to a compulsory, non-consensual blood draw. We have found no Texas cases holding that it applies where the defendant consented to giving a specimen of his blood. One state court has held that consent dispenses with the probable cause and exigent circumstances requirements under the first part of the *Schmerber* analysis, but it does not relieve the prosecution of its burden to show that the blood draw was performed in a reasonable manner under the Fourth Amendment. *See State v. Davis*, 41 Kan.App.2d 1034, 207 P.3d 281, 285 (2009). We will assume, without deciding, that the *Schmerber/Johnston* analysis applies in this case even though Appellant consented to providing a specimen of his blood.

*Part One of the Schmerber Analysis*

Appellant restricts his argument on appeal to the second part of the *Schmerber* analysis. Even though Appellant has effectively conceded the first part, we note that the law enforcement officers had probable cause to arrest Appellant for the offenses of intoxication manslaughter and driving while intoxicated and Appellant consented to giving a specimen of his blood after being provided the statutory warnings. The first part of the analysis is satisfied.

- 13 -

*Part Two of the Schmerber Analysis*

1.  Was the test chosen reasonable?

The first question under the second part of *Schmerber* analysis requires us to determine whether the test chosen was reasonable. The Supreme Court observed in *Schmerber* that blood tests are a highly effective means of determining the degree to which a person is under the influence of alcohol. *Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836; *Johnston*, 336 S.W.3d at 658. Further, blood tests are commonplace, the quantity of blood taken is minimal, and for most people, the procedure involves virtually no risk, trauma, or pain. *Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836; *Johnston*, 336 S.W.3d at 658. There is a presumption that venipuncture blood-draw tests are reasonable under the Fourth Amendment. *Johnston*, 336 S.W.3d at 659. The burden is on the defendant to show that a venipuncture blood draw is not a reasonable means to obtain a blood alcohol assessment as to him due to a verifiable medical condition. *Id.* at 660. There is no evidence in the record before us to support such a finding; consequently, we will presume that the choice to administer a venipuncture blood draw is reasonable. *See id.*

2.  Was the blood draw performed in a reasonable manner?

The second reasonableness question requires us to examine whether the blood draw was performed in a reasonable manner. *Johnston*, 336 S.W.3d at 658, *citing Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836. This determination is made on an objective, case-by-case basis in light of the totality of the circumstances surrounding the blood draw. *Johnston*, 336 S.W.3d at 661. Appellant asserts that the blood draw was unreasonable because: (1) he was punctured more than four times to obtain a blood sample; (2) the blood was not drawn in a sanitary place; and (3) the blood was not drawn in accordance with accepted medical practices. Appellant additionally argues that an insufficient amount of blood was drawn to perform the test and the blood was not

preserved properly. These two arguments pertain to the validity or reliability of the testing subsequently performed on the blood and are irrelevant to a determination whether the blood draw itself was reasonable under the Fourth Amendment. We will address these arguments separately from the Fourth Amendment issue.

Francisca Contreras was certified as a phlebotomist at the time she drew Appellant's blood. The hospital where the blood was drawn has a procedure or protocol for drawing blood and Contreras follows that procedure each time she draws blood. The procedure requires her to apply a tourniquet, locate the vein to be used, clean the area with alcohol, or iodine if it is an alcohol-related case, and wait for the cleaning agent to dry before drawing the blood. Contreras used the vials in the draw kit provided by the officers and she cleaned Appellant's skin with iodine rather than alcohol before drawing his blood.

Contreras had some difficulty locating a vein and she was unable to draw ten milliliters of blood in one of the four draws, but she eventually drew 10 milliliters of blood from Appellant as required by the instructions in the DPS blood kit. Deputies Jimenez and Cordero were present during the entire blood draw. Both recalled that Contreras had difficulty drawing the blood and she had to use four different locations on Appellant's hands and lower arms to draw the blood. Appellant did not give any indication that he was in pain during the blood draw despite being stuck more than once. Contreras testified that it might be necessary for her to make multiple attempts to draw blood from a patient when she has difficulty finding a vein. She explained that veins can be difficult to locate when a person is nervous or cold because the veins "tend to hide." The State also introduced evidence that the place where Appellant's blood was drawn is sanitary. Contreras specifically testified that the laboratory area where she drew Appellant's blood is sanitary and it is cleaned daily with a bleach solution. Appellant does not challenge Contreras's

qualifications to draw blood and the evidence introduced at the suppression hearing and trial established that she is qualified to draw blood by virtue of her training and experience as a certified phlebotomist. Contreras drew Appellant's blood using the hospital's established procedure for performing a blood draw as she had done thousands of times.[7] She also followed the procedures set forth in the instructions in the blood draw kit in that she used iodine rather than alcohol to clean the draw sites and she drew 10 milliliters of blood. The blood draw took placed in a laboratory area of a hospital and there is evidence in the record that the area is sanitary. There is no evidence that the environment is not a safe place in which to draw blood. While Contreras had to "stick" Appellant four times in order to successfully draw his blood, she explained that it is sometimes difficult to locate a patient's veins if he is nervous or cold. There is no evidence that the procedure subjected Appellant to an unjustified element of personal risk of infection or pain above and beyond those normally associated with venipuncture blood draws. *See Schmerber*, 384 U.S. at 772, 86 S.Ct. at 1836; *Johnston*, 336 S.W.3d at 662-63. Under the totality of the circumstances, we hold that the blood draw was performed in a reasonable manner and the test was reasonable under the Fourth Amendment.

### *Additional Arguments*

Appellant also contends that the trial court should have suppressed the blood test results because an insufficient amount of blood was drawn and the blood was not properly preserved. The trial court's decision to overrule Appellant's objections and admit the blood test results is reviewed for an abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex.Crim.App. 2010). A trial court abuses its discretion when its decision is outside the zone of reasonable disagreement. *Id.*

---

[7] Contreras drew blood from patients approximately 600 times a month and she had worked as a medical assistant and phlebotomist at the hospital for five or six years.

Citing Section 49.01(1) of the Texas Penal Code, Appellant first asserts that the test required 100 milliliters of blood to be drawn. Section 49.01(1) defines "alcohol concentration" as meaning the number of grams of alcohol per (A) 210 liters of breath, (B) 100 milliliters of blood; or (C) 67 milliliters of urine. TEX.PENAL CODE ANN. § 49.01(1)(West 2011). A person is intoxicated if his alcohol concentration of .08 or more. TEX.PENAL CODE ANN. § 49.01(2)(B). Section 49.01(1) does not require that 100 milliliters of blood be drawn from the suspect or that the test be performed on 100 milliliters of blood. The instructions included in the DPS blood kit requires the blood collector to "approximately 10 milliliters" of blood specimen from the subject in the provided blood tube or other gray top 10 milliliter vacutainer. The phlebotomist initially had difficulty drawing the required 10 milliliters but succeeded on her fourth attempt. Jim Thomas, the regional laboratory manager for the Texas Department of Public Safety, testified the combined amount of blood submitted in the four vials of blood was approximately 23 milliliters of blood. He explained to the jury that the amount of blood used for the blood alcohol test was 0.2 milliliters and he performed the test on two different samples of Appellant's blood. Thus, he used a total of 0.4 milliliters of blood for the test from one of the tubes. When asked whether it was necessary to use blood from any of the other three tubes, Thomas specifically testified that that he did not use blood from the other tubes because he "had plenty to work with just in the one tube" he used.

Appellant next argues that the blood specimen was not properly preserved because it was not immediately refrigerated. The evidence shows that the phlebotomist gave the vials to Deputy Jimenez and he followed the instructions in the DPS blood kit to mix the anticoagulant powder with the blood by turning each vial eight times. Jimenez placed the vials in the evidence locker and the evidence technician refrigerated the vials later that same day. The evidence technician

mailed the vials to the laboratory the same day they were collected. The instructions included in the DPS blood kit stated that the blood specimen could be "either mailed or hand-delivered" and recommended that the blood specimen be refrigerated if its submission to the laboratory "is delayed more than a few days."

The evidence does not support Appellant's claims that an insufficient amount of blood was drawn or that it was not properly preserved. The trial court did not abuse its discretion by overruling Appellant's objections and admitting the blood test evidence. Having also determined that the blood draw was performed in a reasonable manner and the test was reasonable under the Fourth Amendment, we overrule Issue Two. The judgment of the trial court is affirmed.

September 29, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)